## HANSLIP v HAMMER

Ohio Appeals, 6th Dist, Lucas Co
No 2425. Decided Feb 16, 1931

Conn & Holloway, Toledo, for Hanslip. DeWitt Fisher, Toledo, for Hammer.

WILLIAMS, J.

Ella L. Hammer, who died in December, 1928, was at the time the injury was sustained, the owner of a farm adjoining Heather Downs Golf Course. At that time

the farm was leased at a rental of $300.00 per year to Willard Sharples and Meta Sharples, who farmed the land and divided the proceeds. On August 1, 1928, the plaintiff, a boy 15 years of age, in company with other boys, went upon the farm to hunt for golf balls and Willard Sharples approached with a shotgun and discharged it, evidently to scare the boys away, and a shot struck the plaintiff in the right eye and destroyed it. The evidence discloses that previous to the time the injury was sustained, caddies and other persons had crawled through the fences from the golf course to the farm and had broken them down, and in going about the farm in search of golf balls they had tramped down and damaged the crops. The question has arisen, however, as to whether or not there was evidence tending to show that at the time of firing the shot Willard Sharples was Ella Hammer's agent, acting within the scope fo his authority. The plaintiff called Willard Sharples for cross-examination, and we quote from his testimony the following:

"Q. You had some talk with the doctor one time about these caddies or persons going through his fence and breaking the fence down and damaging the crops, didn't you? A. I think I talked with him once about it, yes. Q. You talked to Mrs. Hammer, his mother about it, didn't you? A. Yes, sir.

Q. Complained to them on numerous occasions? A. Yes, sir.

Q. Who looked after them? A. Why Hammers was the one told us to do it.

Q. You went up and complained about the breaking out of the fences, destroying the crops did you not? A. Complained about that when I paid her rent, yes, sir.

Q. She told you to keep them off? A. Yes, sir.

Q. Mrs. Ella Hammer, she was the owner of the farm you rented from her anyway? A. I rented from her, yes.

A. I saw her one time and she said she would speak to Mr. Blair and have him keep them off."

We may assume this testimony to be true, for the purpose of determining whether the court erred in directing a verdict.

Even though the farm was leased and Ella Hammer was not greatly concerned in the crops, except in so far as it might be necessary for her tenants to harvest the crops so as to be able to pay the rent, yet Ella Hammer did own the fences referred to in this testimony, and having been informed that the fences were being broken down by the caddies and other persons going through them, she was protecting her own interests in telling Willard Sharples to keep these persons off, and in keeping them off he was not only acting in his own behalf but in her behalf as well. The means and method of accomplishing that purpose were left to the determination of Willard Sharples and if he employed his own means and was guilty of negligence in so doing, his principal would be chargeable therewith. **Waldron vs. N. Y. C. R. R. Co., 106 Oh St 371.**

The court erred to the prejudice of plaintiff in error in directing a verdict, and the judgment will be reversed and the cause remanded for a new trial.

Lloyd and Richards, JJ, concur.